Thank you and may it please the court. My name is Brent Newell. I'm appearing for El Comite. I'd like to reserve five minutes of my time for rebuttal, please. This case, your honors, is about EPA's failure to ensure that California's state implementation plan meets the minimum requirements of the Clean Air Act. And as you're aware from the briefing, the court's decision in Warmerdam is a key component of this case. And I want to direct your attention to the last page of that decision. It's 539F3rd, page 1073, where the court summarizes and says, because neither the Wells Memorandum nor the baseline data provide an enforceable emission standard delimitation, no relief is available to El Comite under the citizen supervision. The court went on to say, nor would the district court have jurisdiction to determine whether EPA's rulemaking process was appropriate. But this court would have jurisdiction to determine that legality. And the Warmerdam court specifically referred to Section 7607B1, which is the operative provision that we seek review today. In defense, EPA does not contest the merits. So I want to address two points this morning. First, El Comite timely filed this petition. And second, the court has jurisdiction. In Section 307 of the Clean Air Act, Congress set forth a provision by which the window of opportunity for judicial review reopens. So after the 60th day, the normal 60-day period closes, the judicial review window of opportunity reopens when new grounds arise. But if we adopt your view of that, doesn't that mean that any time we have a judicial decision that comes along after that that we're reopening the appeal period, the petition period? Well, I can't speak broadly to any particular instance that would reopen it. This particular case — No, but we have to be. I mean, I guess I wish you would, because we're painting a little broader canvas here, and we're deciding when we're going to allow reopening of these cases. Well, when a new claim becomes justiciable, that's when the window reopens. If a claim could have been brought within that first 60-day period, then it would be time barred. The issue then for the Court is whether the claim becomes justiciable after that 60-day period ends. So if something happens in the course of a SIP implementation, or in this case an enforcement action, where a claim arises after the 60th day, then the Court should have jurisdiction and should take jurisdiction over such an issue, because — So your position is that this claim was absolutely not ripe during the comment period, during the appropriate period? Well, I think it could have been ripe. But the problem is, is that everybody who participated in that process thought that it was enforceable. The public thought it was enforceable. They commented on the unenforceability. EPA assuaged their concerns with a response to comments that said, don't worry about it, the Wells Memorandum is in the State Implementation Plan. So how are we supposed to gauge as a Court when a case is ripe and when it isn't, and how do we gauge whether the claim was unenforceable?    And I think it's a very important question for the purposes of the justiciability analysis that you're urging today. Are you making an estoppel argument, in other words, that you were — that people were misled by the EPA into thinking that it was one thing, and they can't adopt a contradictory position? It's very much estoppel. And the way we painted it in our reply brief was sort of in contract terms, because this Court in Bayview has used principles of contract and tort law to interpret the SIPP. And in contract, where a party induces behavior of the other party or a third party to behave or to refrain from seeking judicial review, then that invokes a sort of reliance. And the remedy in contract for reliance is to put the party in the position that they would have been when the contract was formed. So if you were to use that kind of principle, then you would allow EPA or El Comité to be in the position where, back in 1997, where they could seek judicial review. Now, I want to add, Judge Thomas, that even the State regulators thought that the Wells Memorandum was in the SIPP. They responded to a notice of intent to sue in 1998. And their response to that notice, they specifically referred to the components of the document that the Warmadam Court later held was not in the SIPP anymore. And EPA, just days before Warmadam came down, was interpreting the pesticide element of the SIPP in a Ventura County rulemaking. And they told the public again that it was enforceable. They wouldn't have approved it if it was enforceable. And they specifically referred to those components of the Wells Memorandum, including the June 15, 1997 deadline to adopt regulations. So everybody thought that this was an enforceable SIPP until this Court decided Warmadam. And that changed the game entirely. El Comete filed its petition within 60 days of that decision's revelation. So it's a timely filed petition. Well, I think we have your argument at hand. Do you want to say something for rebuttal? I have — You have plenty of time. I have plenty of time here. You don't have to use it all. Certainly not. But, you know, I do want to make sure that the Court understands that El Hato has been dated by recent authority in the D.C. Circuit. And it certainly doesn't stand for the proposition that EPA says it stands. So I want to — I'll just take the rest of my time for rebuttal. Right. Good morning, Your Honors. I'm Meredith Weinberg from the U.S. Department of Justice here on behalf of Respondents. With me at counsel table is Jefferson Whaling from the EPA and Austin Saylor from the Department of Justice. EPA submits that this Court should dismiss the petition because it was filed almost 12 years too late. As you know, Section 307 contains an exception for after arising grounds when a petition is based solely on those after arising grounds. EPA submits that is not the case here. Warmer Dam did not change the contents of the SIP. It merely confirmed the contents of the SIP. It did not change the law, and it did not make the claim ripe. Do you think that this claim was really ripe during the initial period? Yes, Your Honor. And you told — I mean, basically, I think counsel is correct that everybody assumed that the Wells Memorandum was part of the SIP. I see nothing to the contrary, really, in the record. So if they had filed a petition at that time, I have to say, if I were sitting here, I would say, what's your problem? Everybody says it's fine. There's no — and he would say, well, you know, we don't know what's going to happen down the road. And we would have said, well, that's not right. Let's see what happens later. Your Honor, EPA submits that the Warmer Dam decision would have been the same back in 1997. The Court found that the regulatory text was clear. And while there were comments in the preamble to the 1997 rule that were in conflict somewhat with the regulatory text of the rule, again, the Warmer Dam Court found that it was clear that the Wells Memorandum was not contained in the 1997 rule. But what you're basically saying is that people shouldn't believe what the agency says. I mean, isn't that at the bottom line what — if we adopt your position, we have to tell the world, don't believe what the agency says. And in fact, we want you to file suit immediately if you think the comments, regardless of the assurances. Isn't that where we're headed with this? Your Honor, EPA does make a good-faith effort in a preamble and in comments to help parties understand a rule. But the fact remains that where regulatory text is clear and unambiguous, as this Court found in Warmer Dam, parties are not entitled to rely on comments to a SIP, preamble to a SIP. Well, perhaps not. But let's say that they had filed a suit, a petition for review, as you claim they should have all this time ago. What would the EPA position be, that our comments don't mean what they say? Well, Your Honor, I can't speak for what would have happened 12 years ago. No, obviously not. I'm asking you a tough question. But frankly, I think where we're headed here with your position is we're going to see a lot of protective suits filed, petitions for review, just when — despite the assurances of EPA or other agencies, if we confirm your position. Yes. I would submit, however, that in 1997, the claim was ripe because the regulatory text was clear at the time. And any discrepancy between the preamble and the regulatory text was Petitioner's best signal to file a petition at the time, which would have been ripe. In fact, counsel for Petitioners just noted that if a petition could have been filed in 1997, then the after arising grounds provision doesn't apply. And in fact, here, Petitioners could have filed a suit in 1997. The regulatory text has not changed with Warmerdam. The regulatory text is clear, as this Court found. It was the same in 1997 when Petitioners could have and should have challenged the rule. Well, I agree with you on that, that the regulatory text hasn't changed. But I think the expectations have changed quite a bit, haven't they? Are you really saying that EPA didn't anticipate that the Wells Memorandum was part of the suit? Your Honor, the comments are what they are. I think EPA certainly made some comments in the preamble that the Wells Memorandum would be considered a clarification of the SIP. On the other hand, there were comments from California noting that the timetable portion of the Wells Memorandum was requested to be pulled from the SIP, and those were also in the preamble. So there was clearly confusion or discrepancy between the preamble and the contents and the regulatory text and the contents of the SIP, as this Court found in Warmerdam, were clear. The Wells Memorandum was not in that regulatory text. Mr. Weinberg, I'm a trial judge, not an appellate judge. A lot of times, I'm applying something that Judge Thomas and his colleagues said was clear one way, and then a few years later, an inbank looks at it and says, actually, it was supposed to be the other way, and I followed the first way and I get reversed. It may not be fair, but ultimately, we're trying to get to the right result. And if the EPA has misled someone into doing something a certain way, isn't there a responsibility on the government under those circumstances to give people an opportunity to contest what they were told they could not contest back then? I would disagree somewhat that EPA misled anyone. As I said, EPA does make a good-faith effort to assist parties in understanding a rule in their comments on a preamble. And, you know, in this case, the outcome was that EPA made some comments in the preamble that were in conflict somewhat with the regulatory text. And you say they were made in good faith. And good faith, we certainly agree with that 100 percent. No one intended to mislead anyone. But generally, when someone makes a good-faith mistake, they tend to make a good-faith apology and say, please go ahead. Under Section 307, the law is clear. The petition must be based solely on new grounds. That is not the case here. And while I understand your the reluctance to apply 307 so strictly, the point of 307 is to provide finality for parties, the agency, the regulated community. And in this case, that would not be served were petitioners allowed to file this petition or maintain this petition almost 12 years too late. Right. But, you know, the problem I have with this case, and it's a difficult case, forgetting that we're not on the merits, we're simply on procedure, but that's common in these cases, is really that the thrust of a lot of agency appeals here, and we hear a lot of them, is that you should trust the agency. You trust their expertise. You trust what I say. You owe Chevron deference in interpreting statutes. And your argument here is, don't trust anything we say. You can't count on it. Obviously, the plain text was at odds with what we said. And therefore, we're cutting at you. You need to file suit every time or file a petition for review every time you suspect that there's an ambiguity in an EPA action. And that seems to be a very odd result for an agency in an odd position. Because as I play this out and I'm thinking, as I said before, if I were sitting back here all those years and El Comite had brought the suit and brought this petition for review, I'd say, what are you talking about? This isn't right. Everybody agrees that it's part of the SIP. This is just a meaningless action. And I suspect EPA would have had a hard time saying that it wasn't at that time. Your Honor, I think I would phrase it a little differently from that this would require parties to file protective suits and file too many suits. I would say that it means more that Petitioners should be carefully reading, or parties should be carefully reading the regulatory text which, when unambiguous as this Court found, controls. And, again, you know, I don't we're not saying that there wasn't some discrepancy between the preamble and the text, but that I think that that would be the best signal to make sure that the regulatory text is carefully reviewed. And if there are grounds at the time, in 1997 in this case, to petition, then a petition should be filed at the time. The difficulty, though, and I hope we're not getting into a loop here tonight. And, obviously, you didn't draft this. You weren't representing the agency then. But this is part of the give and take of regulation, particularly environmental assessment, is that people ask for clarification. The agency gives clarification. And it's hard to come up with a principle rule that assists us, really, in dealing with these cases. If you're saying you have to ignore all that we say, I do think, there's no question in my mind, having sat on now this is my fifth or sixth environmental suit in the last month or so,  I don't see any alternative for the environmental community except to file protective petitions for review. So that's the dilemma I think we're facing as a policy matter. You're going to be a lot busier. Unless we save you from yourself. Yes, Your Honors. I just want to point out, if the Court finds that there are new grounds on which this petition is solely based, we would submit that it would, that the petition should still be dismissed without prejudice or remanded to the agency so that the stand now, since 1997, create a record for review and potentially save this Court from wasting judicial resources. Thank you very much. Thank you. Thank you. Thank you. One thing that struck me as counsel was making that argument was what Judge Carlton said during the summary judgment hearing back in 2006 or whenever it was. And he said nothing about this case is clear. And then he wrote in his opinion, he said, you know, this is like trying to read tea leaves. And that, you know, he ultimately interpreted the SIPP to say, you know, the Wells Memorandum was in there because of the way that EPA wrote about it in the preamble and then about the way, especially David Howacamp declared. He was the former EPA official who oversaw that. So I think if the parties had sued back in 1997, EPA's position based on Howacamp's declaration would have been, yeah, it's in there. We called it a SIPP clarification. And if you look at the CFRs and the way that they list out these documents, you know, 40 Code of Federal Regulations, section 52.220, subsection C, subsection 204, subsection I, subsection big capital A, subsection 6, it just says pesticide element. So it's not clear. If they said this Wells Memorandum was part of the SIPP, you would think, well, that's part of the pesticide element. It's part of that big component of documents that just has two names. So, you know, it's not as clear as they say. And I agree with the Court that if you were to rule that El Comite can't seek judicial review now, there would be more petitions for review challenging these EPA SIPP approvals. Just to turn the tables, I guess, what's wrong with that? I mean, that gives you clarification and it gives the EPA the finality that it needs. I think there's some force to the EPA's argument that, look, we can't entertain these petitions for review decades after the rules, the SIPP has been approved. And so it's more work for us, big deal. You know, we're here. I mean, that's the flip side of the argument is, yeah, if you want it clarified, why not say this is something you have to file? Well, that may or may not be correct. But if we look at this particular case and the muddied rulemaking that happened, you couldn't really apply that rule here. Expecting parties to look forward in time within just that 60-day period I think is a very difficult rule of law to develop here because things change. Things happen. And Congress really came out and said, look, we're going to allow another shot at the – another bite at the apple when new grounds arise. And it wasn't just limited to new factual grounds that what might give rise to a rulemaking for a petition. Congress just said new grounds. So in this situation, and looking at the American Road decision, a newly justiciable claim should be subject to another bite at the apple. Well, if you apply the rules of estoppel against the government, there's a pretty high standard. It's not normal estoppel. It's not a contract estoppel. You must show affirmative misconduct. And that doesn't necessarily apply here. But I say that by analogy in saying, look, just because an agency official interprets a statute one way or in a memorandum, that doesn't change the text of the statute. And I think that was part of the point of Judge McCune's opinion. So if you have doubts, why not file a petition for review within 60 days? You stop short of saying it wasn't right. I mean, if you said it wasn't right then, I might have more sympathy for your argument. But if you think it was potentially right during the 60-day period, then it seems to me that it was justiciable. Does that make sense or not? I think it does. To me, the question is, is it right or not? Well, I don't think it was right in 1997 because the agency had told the public that it's enforceable, it's in there. The State, when they submitted the document to EPA, intended for it to be in the SIP. So I don't think it was in anyone's minds that there was an unenforceable problem with the State implementation plan. So whether you call it ripe or being duped by the agency, I think it just comes down to the same problem, which is who would have filed such a lawsuit? And if this case goes the other way, if the court rules against El Comité, there will be more. Because I've been doing Clean Air Act work for a while, and we will file petitions for review just to ensure that every component is enforceable. Because once that 60-day period runs, these State implementation plans stay in place a very, very long time. You know, in the next petition that's going to come up, they're going to be arguing that the 1994 SIP that came in is, you know, the end-all, be-all, even though we're here in 2010. So if you can't go back in time with using that window of opportunity that Congress created to challenge something that's newly justiciable, then parties are going to bring these prophylactic suits to ensure that every component of those plans are, in fact, enforceable. That's all, Your Honor, unless the Court has any more questions. Roberts. Yeah. Thank you for your arguments. Thank you. This Court will be submitted for decision.
judges: Lasnik, Hall, Thomas